IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAVERN B. SPILLANE, | ) CIVIL NO. 13-00527 HG-RLP |
| | ) |
| Plaintiff, | ) DECLARATION OF LAVERN B. |
| | ) SPILLANE |
| v. | ) |
| | ) |
| ERIC K. SHINSEKI, in his | ) |
| capacity as the Secretary of | ) |
| the Department of Veterans | ) |
| Affairs, | ) |
| | ) |
| Defendant. | ) |

....

## DECLARATION OF LAVERN B. SPILLANE

Lavern Spillane, being first duly sworn on oath and being advised that she makes this Declaration under penalty of perjury, states as follows:

1.    I was born on June 17, 1964, in Florida, and am African American woman. I am currently 50 years of age and married to Timothy Spillane.

2.    I went to Plantation High School and graduated in 1982. I attended Broward Community College, then proceeded to the University of Florida.

3.    I was in the United States Navy where I served as a medical technician, being responsible for the diagnostic tests administered to patients while in the care of medical physicians; I attended the United States Navy Hospital Corps School in 1992, in Great Lakes, Illinois and the United States Naval School of

Health Sciences in Bethesda, Maryland in 1993, graduating in 1994.

4.    In 1998, I graduated from Roger Williams University, Bristol, Rhode Island, where I earned a Bachelor of Science degree in Social and Health Services.  I also attended the University of Hawaii School of Business, where I earned my Masters in Business Administration in 2004.

5.    After the Navy, I was employed at Yuma, Arizona, where I was employed as a Medical Technician. I received less compensation than my colleagues and I filed a discrimination complaint against my employer. We settled my claim of discrimination by settlement in which I received back pay equal to the amount that I should have been paid.

6.    We then moved to Oahu, Hawaii where I found employment at Tripler Army Medical Center and then with the Department of Veterans Affairs as a Medical Staff Coordinator; in 2007, I was selected, after a interview by a panel, as Administrative Officer, for the Geriatrics, Rehabilitation and Extended Care services, referred to commonly as "GREC." **[Exhibit 1 is a copy of my Job Description]**

7.    I am responding to the Declaration by Michael Carethers and attached Exhibits filed in Support of Defendant's Motion for Summary Judgement filed in this matter on October 1, 2014 and state that the Defendant's papers do not give an accurate account

2

of what took place and the discrimination and retaliation of which I complain.

8.    My first Complaint of Discrimination was filed with EEO Counselor, Carolyn Patterson, on June 7, 2011. My first complaint alleged that I was subjected to a hostile work environment and received a discriminatory Evaluation/Performance Appraisal/Proficiency for the years 2009 and 2010 based on my race-Black. I had requested that the harassment be stopped and that my supervisor, Michael Carethers receive supervisory and sensitively training and that I receive my Performance Appraisals for the years 2009 and 2010, that I be given a step increase as a result of my Performance Appraisals and that I be awarded a bonus and/or monetary award for my work performance during the years 2009 and 2010. **[See Exhibit 2, the Counselor's Report, which was received by me on July 9, 2011]**

9.    My second Complaint of Discrimination was filed on August 19, 2012 and alleged that I was subject to a Admonishment and Denied Reasonable Accommodation as a qualified individual with a disability. The basis of my second Complaint of Discrimination was retaliation for my First Complaint of Discrimination, which I filed on June 7, 2011 and discriminatory as I am disabled and a violation of VA policy guidelines in VA Handbook 5975.1, *Processing Requests for Reasonable Accommodation From Employees and Applicants with Disabilities*, as required

3

under the Rehabilitation Act of 1973. [**See Exhibit 3, the Complaint of Retaliation and Discrimination and Exhibit 4, the Counselor Report.**]

10. I received an Admonishment from Dr. Michael Carethers on March 30, 2012. On September 27, 2012, I received a Reprimand from Dr. Michael Carethers. An unsigned copy of the Reprimand is attached as **Exhibit 5**.

11. The Organizational Chart of the Geriatrics, Rehabilitation and Extended Care Service of the VA Pacific Islands Health Care System is attached hereto as **Exhibit 4** and had 153 persons employed by it in December 2012, according to the GREC Staff Roster, which is attached as **Exhibit 6.**

12. The Department of Veterans Affairs permits its employees to self-identify whether they are disabled and have a Veterans' Preference. I am rated as disabled, of more than 30% with a service-connected disability by the Department of Veterans Affairs as is shown by **Exhibits 7, 8, and 9.**

13. I have been treated by physicians working for the Department of Veterans Affairs; in 2012, my physician was Dr. Laura Jones employed by the VA Pacific Islands Health Care System. I was diagnosed with Dysmenorrhea/Menorrhagia in 1996; I was also diagnosed with Multiple Myoma in late 1996, early 1997. I was diagnosed with Degenerative Joint Disease (DJD) in 1998. I was told that would get more severe as I got older and perhaps

4

cause more pain and less mobility. I did inform Dr. Michael Carethers that I have disabilities that affect my day to day activities.

14.   I have degenerative joint disease that primarily affects my neck, shoulders and back. However, it can, and did affect my breathing.  If I am seated for long periods of time, I stiffen, cannot turn my head and experience numbness in my extremities.  This was accommodated by VA with the purchase of a chair, which purchase does mitigate but does not eliminate the effects of degenerative joint disease.

15.   The dysmenorrhea/menorragia can also erupt and by its very nature render me incapable of functioning and I need to leave immediately. The multiple myoma can bring about debilitating cramps and pain.

16.   I am affected in my activities of working, walking, performing manual tasks, sitting, breathing, turning my head and concentrating.  Sitting upright in my chair and holding my neck to view the screen of my computer and typing is affected by my cervical degenerative joint disease. I have a neck brace that I use, a Tens Unit, a heating pad and medication to deal with my disabilities.

17.   I have been prescribed and do take the following medications for which the VA has provided most of the medications:

5

Albuterol;

Amoxicillin;

Chlorhexedine gluco-oral rinse;

Codeine 30/acetaminophen;

Cyclobenzaprine;

Doxycycline hyclate;

Ferrous sulfate;

Guaifenesin;

Ibuprofen;

Ipratropium;

Levalbuterol Tart;

Loratadine;

Normal saline nose mist;

Oxymetazoline;

Pseudoephedrine;

Tizanidine HCL;

Tretinoin;

Triamcinolone acet ointment;

Trimethoprim/sulfamethox.

18.   I initially had a good relationship with my supervisor, Dr. Michael Carethers as is shown by **Exhibit 10**, which is a collection of emails from me to Dr. Michael Carethers of October 6, 2008, February 4, 2009, April 3, 2009, July 17, 2009, September 9, 2009 and September 10, 2009.

19.  On October 26, 2009, I received an email from Dr. Michael Carethers requesting that a self-performance plan be submitted to Dr. Carethers; attached to his email of October 26, 2009, was an earlier email, sent on October 21, 2009 stating the importance of a performance appraisals, that a late submission may cause the non-receipt of a performance award and attached to it was an email from Jacqueline Sturdivant, a Human Resource specialist, explaining the importance of a Performance Appraisal report. **Exhibit 11**

20.  I sent my self-appraisal to Dr. Michael Carethers on November 23, 2009 as is shown by the email shown in **Exhibit 12**.

21.  Despite my timely submission, my performance appraisal was not timely submitted and my name was submitted to all VA Pacific Islands Health Care System supervisors as a GREC employee whose supervisor had not completed a Performance Appraisal for the year 2008 to 2009. **Exhibit 13**

22.  On February 16, 2010, I sent an email, with attachments, indicating the documents which I had forwarded to Dr. Michael Carethers the previous November; I had sent him the Performance Plan, the Request for Personnel Action, my expected Quarterly Step Increase, and my filled out Performance Appraisal Plan. **Exhibit 14**

23.  Subsequently, on August 11, 2010, I sent an email to Dr. Carethers that I be permitted to review the revision of my

Performance Appraisal. **Exhibit 15**

24.  On August 16, 2010, I sent Exhibit 16 to Dr. Carethers which confirmed that my submission to him on November 23, 2009 had been edited by him but not given to me. I reviewed it on August 18, 2010 and found that he disagreed with my self-assessment. **Exhibit 16**. I requested a reconsideration of my performance appraisal on August 20, 2010, stating that I liked my job and wanted to preserve our working relationship. Dr. Carethers refused to reconsider his appraisal of my work for the period of 2009 to 2010.  **Exhibit 17**

25.  On September 17, 2010, I submitted a Formal Grievance pursuant to the Grievance Procedure; as required by the grievance procedure, I filed a Grievance with the supervisor of Dr. Michael Carethers, Dr. William Dubbs, the Chief of Staff for Pacific Islands Health Care System, Department of Veterans Affairs. **Exhibit 18**

26.  My initial contact with an EEO Counselor took place on February 23, 2011. As indicated earlier, I complained about a hostile work environment, pointing to the harassment by Randy Locke, a security guard working at GREC, Dr. Carethers' favoritism of a Filipino male employee, his denial of my request for compensatory time to perform the work of another employee, and his speaking to me in an accusatory, condescending, and demeaning manner and my late and marginal performance appraisal

8

for the period of 2009 to 2010.

27.   On February 4, 2011, I forwarded to Dr. Carethers an
email relating to Randy Locke, who was employed by the Department
of Defense to work as a security guard at Tripler Medical Center,
primarily at the Center for Aging, which is located on the
grounds of Tripler Medical Center. The Center for Aging has its
administrative offices at Tripler Army Medical Center, known as A
wing, and the B and C Wing, which is a nursing home containing 60
beds for Veterans.

I complained that he left his post, situated next to
receptionist desk of the Center for Aging Building at 11:00 a.m.
and returned at 12:30 p.m., that he read the newspaper to
veterans in the C Wing and had on occasion left a Tripler golf
cart in the emergency room overnight. I submitted my complaint to
Dr. Carethers as he was my supervisor and the administrative head
of the Center for Aging; I courtesy copied my complaint to the VA
Associate Director, Kalautie Janghari and to Dewey Brown, one of
Senior Managers for  VA Pacific Islands Health Care System. Mr.
Brown delegated my concerns to Al Zadio, who is designated as the
Chief Security Officer of the  VA Pacific Islands Health Care
System. **Exhibits 19, 20, 21.**

28.   Dr Carethers had a different view of my stated concerns
about Randy Locke and on February 16, 2011, I was advised that my
concerns were a communications issue that should be handled by

the leadership of GREC and not a Police/Security Issue. **Exhibit 22.**

29. Randy Locke retired in March 2012. Unknown to me, Mr. Locke had filed 3 complaints against my use of a Tripler parking pass to park my car in the parking lot of Center for Aging, dated November 5, 2012, December 5, 2012, and March 27, 2013. Mr. Locke received a response from Dr. Dubbs. **Exhibit 23.**

30. In addition to filing complaints about me with Dr. Dubbs and Dr. Carethers, he would come to the Center for Aging, make comments about my car to staff and stare at me. He would take pictures of my car. I complained about his conduct to Dr. Carethers, who did nothing and I complained to the VA Pacific Islands Health Care System. **Exhibit 24.** He was deposed by my lawyer on July 17, 2014 and admitted that he took pictures of my car on July 16, 2014. **[Exhibit 25, attached hereto, at page 60 line 15 to page 62 line 9, for his conduct on July 16, 2014.]**

31. On April 7, 2010, Dr. Carethers advised his managers of Compensatory Time requests stating that Compensatory Time requests are to be requested in advance, or on the day that CT is being earned. We were further advised that approval was not automatic, a reasonable request was generally approved. **[See Exhibit 26 for Carethers Email and a request which was approved by myself and credited on March 2, 2011.]**

32. In June 2009, I was given more tasks as to the State

Veterans Home in Hilo, Hawaii, which is operated by the State of Hawaii, but the Department of Veterans Affairs pays the per diem for all veterans living at the facility as well as the bills for the facility. I was advised that I was to act as the Point of Contact for the State Veterans Home and was to sign all documents as the State Veteran's Home Coordinator. To carry out the duties of the State Veteran's Home Coordinator, I would work on the State Veterans Home during my lunch period, not eating my lunch. I requested Comp Time to accomplish my work on the State Veterans Home. It was denied by Dr. Carenthers on his belief that my work hours were sufficient to do this task. **Exhibit 27**

33.  Ron Yonemoto is a GS-13, Health Care Specialist, who has filed Discrimination and Whistleblowing Complaints against the VA Pacific Islands Health Care System. Mr. Yonemoto was assigned to the GREC in 2006, where he has filed Discrimination and Whistleblowing Complaints against the VA Pacific Islands Health Care System, is scheduled to go to trial in January 2015 and his Position Description states that he is to assist with implementing new GREC programs such as the Medical Foster Home program and the disaster planning for GREC programs. **Exhibit 28**

Yet, in June 2010, Mr. Yonemoto has gone to the press and complained of having little work to do. **Exhibit 29**

34.  Mr. Yonemoto's duties were gradually reduced by Dr. Carethers; in 2008, his duties as the State Veteran's Home

11

Liaison duties were taken away. **Exhibit 30** In 2012, when he was given a Fully Successful rating by Dr. Carethers, Mr. Yonemoto did not list work on the State Veteran's Home as one of his tasks. Instead, Mr. Yonemoto was given a Fully Successful rating for doing the following tasks:

a.   Doing a review of hazardous materials stored at the Center for Aging;

b.   Conducting, with the assistance of the Pharmacist and Pharmacist Tech, unannounced inspections on the Center for Aging in November 2012, April 2013 and September 2013;

c.   Serving as the Keyworker for the Center for Aging in the contributions of federal employees in obtaining and documenting their contributions to the Combined Federal Campaign in late 2012.

d.   Completed a Panic Button Review and a Survey on the Impact of a two day Power Outage for the Center for Aging;

e.   Attendance at ceremonies for Veterans Day Services and Memorial Day Services at Punchbowl and the State Cemetery at Kaneohe.

f.   Attendance at the daily 0730 meetings of the Associate Chief of Staff, Geriactrics, Rehabilitation and Extended Care Services and the weekly staff 0800 staff meetings on Mondays. **[Exhibit 30, Self-Appraisal, November 5, 2013]**

35.   As to the daily 0730 Meetings of the Associate Chief of

12

Staff, I would note that I spoke about this 15 minute meeting, which Dr. Carenthers set up and required Dr. Epure to attend, myself, the administrative officer of GREC, Ron Yonemoto, the Health Care Specialist, the head nurse, or assistant head nurse. The meeting does not require the attendance of Dr. Carethers' secretary, as the topic of discussion were not important for her to know, and the reason it was set for 0730 was for Dr. Carethers to attend a 07:45 meeting that Dr. Hastings, the Director, had for the managers of the VA Pacific Islands Health Care System. **[See Exhibit 31, pertinent portions of the deposition of Michael Carethers taken on June 30, 2013, at page 135, line 21 to page 140, line 5]**

36.   Ronald Yonemoto deposed me on December 4, 2008 and February 11, 2009. Mr. Yonemoto has 38 depositions in his file. He had an administrative hearing on September 14, 2009 to September 16, 2009 before Supervisory Administrative Judge Christine H. Seigel, for which he is still awaiting a decision. According to the U.S. District Court of Hawaii website, Ronald Yonemoto has also filed two lawsuits against the Department of Veterans Affairs. One, a Freedom of Information lawsuit was settled in September 2014. The second, an Employment case is set to go to trial in January 2015, the Honorable J. Michael Seabright to preside.

37.   I complained about the favorable treatment given to

13

John Pacada, a Filipino male. On September 8, 2010, I wrote an email to Dr. Carethers complaining that me and Chastity Thompson did not have timecard access to our employees. At that time, the subordinate employee was John Pacada, a GS-5. **Exhibit 32**

38.  On November 18, 2010, I wrote an email to Dr. Carethers pointing out that a project that Dr. Carethers had indicated John Pacada was working on, was not active at that time. **Exhibit 33** On January 11, 2011, Dr. Carethers wrote back and referred to ADPAC duties that Mr. Pacada performs. **Exhibit 34**

39.  The previous day, on January 10, 2011, Mr. Pacada and expressed concern about vent-repair workers working after hours. **Exhibit 35** On January 11, 2011, I inquired as to Mr. Pacada's work status at 10:55 in the night. My message was sent at 1:18 in the afternoon. **Exhibit 36** At 8:07 p.m. that same day, I was advised of the reasons for his hours. **Exhibit 37** On August 23, 2011, I sent an email to Dr. Carethers asking of John Pacada's whereabouts. **Exhibit 38** My concerns became pronounced on June 24, 2011, when I received the OT/CT Report for John Pacada which indicated that Mr. Pacada was claiming overtime usage for 12 weeks in 2011. **Exhibit 39**

Attached as **Exhibit 40**, is a Summary of the Leave Used for John Pacada for the period of August 1, 2009 to August 1, 2011 by the Department of Veterans Affairs. It shows that during that time period, Mr. Pacada used 45.5 hours of authorized leave, 263

hours of annual leave, 19.00 hours of family leave and 232.50 hours of sick leave.

40. Mr. Pacada is no longer supervised by myself. He is now being supervised by, Dr. James Epure, the medical director of the Community Living Center, which is located in the Center for Aging. Since Dr. Epure has been supervising John Pacada, Dr. Epure has been the recipient of complaints about John Pacada, frequently that the trainees have difficulty finding him. Mr. Pacada has been on a flex schedule since October 1, 2013; his hours prior to his flex schedule were 9:00 to 5:30. **[Exhibit 41- at page 42 line 2 to page 47 line 7]**

41. On February 5, 2014, I reported that based on complaints I had received from nurses, that John Pacada, as ADPAC, had approached them and asked that they all give to him, their computer passwords so that he could update information for them. I reported the incident to Dr. Michael Carethers. **[See Exhibit 42, an email trail that I had with John Galliano, who is with Information Technology after I had reported the incident to Dr. Carethers]**

42. In January and February 2011, I had requested my Performance Evaluation for 2010; as is shown by **Exhibit 43**, I had sent Dr. Carethers emails requesting that I be provided with my 2010 Performance Evaluation; on January 26, 2011, I sent Dr. Carethers an email which I courtesy copied to his supervisor, Dr.

15

William Dubbes, to Human Resources, Ms. Ebalaroza, Mr. Shiotsuga, and Ms. Morgan, and to the secretary for the Center for Aging, Ms. Church. I did not receive my Performance Evaluation for 2010. On February 28, 2011, I sent an email to Carolyn Patterson, an EEO Counselor regarding my 2010 Performance Appraisal. On March 2, 2011, I sent an email to Dr. Carethers pointing out that I had not received my 2010 Performance Evaluation and requested that Dr. Carethers advise me what needs to be done for my performance evaluation for 2011.

43.   As shown by **Exhibit 43**, from March to November 2011, I was asked about my lateness at 0730 Meetings that Dr. Carethers required that I attend. On August 16, 2011, Dr. Carethers had sent an email advising Dr. Epure, me and Martha Palmalee that the meeting location and time would be changed. I don't believe that the time had changed for the meeting.

44.   I finally received my 2010 Performance Evaluation and 2011 Performance Evaluations on November 10, 2011. **Exhibit 44**, is an email which I sent to Brian Hemenway, EEO Case Manager, (650) 617-2741 (fax), (650) 617-2740 (office main number), (650) 614-9815 (direct line), (888) 737-3361 (toll free).

45.   It is implied that my request for Reasonable Accommodation is a ploy motivated by Dr. Carethers' Admonishment of me on March 30, 2012. Nothing could be further from the truth. On Monday, April 2, 2012, I spoke to the Local Reasonable

16

Accommodation Coordinator (LRAC) and requested reasonable accommodation for my documented disability. I had been previously using my sick leave when necessary, but I felt that being put on a "Gliding Tour" schedule in which I were permitted to come at 0630 hours, 4 times a week, coming in later 1 time a week, with a shorten lunch period, would permit me to carry out my work with least interruption to my daily schedule. **Exhibit 45**

I have attached pertinent emails to my request, which show the following:

a.    On April 24, 2012, Allyson Ebalazora, an HR Specialist, communicated with me and advised me that she would arrange a meeting with the Local Reasonable Accommodation Coordinator. Per her email of April 24, 2012, she spoke to Dr. Carethers on April 24, 2012.

b.    Ms. Ebarazora set up an a meeting on May 1, 2012 at 11:00; I originally had a medical appointment at 11:00 a.m. but I was able to move it;

c.    Dr. Carethers did not appear for our meeting on May 1, 2012 at 11:00 a.m. and later, on May 2, 2012, I received an email from Ms. Ebalaroza that she had advised Dr. Carethers that there is a time line that he is to follow in the interactive process. Dr. Carethers did not attend the initial meeting stating that he did not know what the mediation was for.

46.    At 7:09 p.m., on May 2, 2012, Dr. Carethers sent an

17

email requesting medical documentation. **Defendant's Exhibit L.**

47.   On May 3, 2012, Jacqueline Sturdevant, the EEO Program Manager advised Ms. Ebalaroza and me, that she had a responsibility to bring my request for reasonable accommodation to the next level of leadership, Dr. Dubbs. I advised Ms. Sturdivant and Ms. Ebalaroza that I will be filing an EEO claim as a result of the denial of my request for reasonable accommodation. **Exhibit 46**

48.   On May 3, 2012, I sent a memorandum to my physician, Dr Laura Jones, Internal Medicine, VA Pacific Islands Health Care System, requesting that she provide documentation for my disability. **Exhibit 47** Dr. Jones replied that same day, her note is Defendant's **Exhibit M.**

49.   On May 14, 2012, I received a Memorandum from Dr. Carethers requesting Medical Documentation to support my request for Reasonable Accommodation. **See Defendant Exhibit N**

50.   A mediation meeting was set on July 24, 2012. Dr. Carethers did mediate but refused the suggestions of the Mediator to allow the accommodations for 90 days and then evaluate my request. **Exhibit 48**

51.   My request for reasonable accommodation was denied by Dr. William Dubbs on August 23, 2012.

52.   On February 1, 2013, Allyson Ebalaroza, the HR Specialist was interviewed by Annette Trefz, a VA investigator.

18

Ms. Ebalaroza testimony is Exhibit 51. She stated her opinion that Dr. Carethers did not follow VA Directive 5971 in that Dr. Carethers did not offer me interim accommodation, that he did not attend the meeting of May 2, 2012, and that his response to my request for reasonable accommodation was not timely. **[Exhibit 49, see Page 42 line 4 to page 43 line 11]**

53. On January 29, 2013, Dr. William Dubbs was interviewed by Annette Trefz, a VA investigator. Dr. Dubbs claimed to have had a meeting with me that did not occur. Dr. Dubbs provided the investigator with his notes of June 15, 2012 with Ally and Chris from H.R., August 20, 2012, with Chris, Jacqueline and Ally from H.R., with Dr. Carethers on August 20, 2012, his denial made on August 3, 2012, and a meeting he had with Jacqueline and Ally from H.R. on January 25, 2013. **Exhibit 50**

54. On May 7, 2012, Joanne Freeman, a Medical Support Assistant, observed that a patient was bound to a wheelchair with a sheet. Ms. Freeman was advised that a Dr. Marianne Tanabe, had authorized the restraint. The next day, Ms. Freeman ascertained that Dr. Tanabe had not authorized the restraint and reported the restraint to Dr. James Epure, the patient's physician. Ms. Freeman also reported the restraint to her supervisor, Melva Munn and to Martha Parmelee, the Nurse Manager of Community Living Center. Ms. Freeman also reported the incident to myself.

55. On May 8, 2012, Martha Parmelee sought to discipline

19

Joanne Freeman by suspending her 14 days; that suspension was sustained by Dr. Michael Carethers, the Director of the Community Living Center on June 29, 2012. Ms. Freeman filed a complaint with the U.S. Office of Special Counsel that her rights as a Whistleblower had been violated by the discipline. I provided a 30 page report of investigation at the Request of the Office of Special Counsel.

On March 4, 2014, the U.S. Office of Special Counsel had found that Ms. Freeman's rights as a Whistleblower had been violated; my lawyer obtained a copy of the report on March 13, 2014. Dr. Epure was deposed on July 17, 2014. He did not know about the decision reached the previous March until July 17, 2014. **Exhibit 51**

Dr. Carethers was deposed on July 24, 2014. He claimed that he had read the decision of the U.S. Office of Special Counsel, made on March 4, 2013, on July 23, 2014. **[Exhibit 52-page 66 line 8 to page 74 line 18]**

56.   On September 19, 2013, I was handed a revision of my performance evaluations for 2010 to 2011 and 2011 to 2012 by Dr. Michael Carethers. I was previously given a Minimally Satisfactory rating for my performance evaluation for 2010 to 2011; I was previously given an Unsatisfatory rating for my performance evaluation for 2011 to 2012. I was given a Fully Satisfactory rating for both 2010 to 2011 and for 2011 to 2012 by

20

Dr. Michael Carethers on September 19, 2014. **Exhibit 53 and Exhibit 54**

The explanation given by Dr. Michael Carethers is that the revision was because of a technical mistake that he had made when he gave me the original ratings. **[Exhibit 52-page 55 line 9 to page 59 line 22]**

57.   My duties as the Administrative Officer of GREC is being reduced by Dr. Michael Carethers. Robyn Galliano was moved to GREC in July 2014 as she had filed an EEO complaint against her former boss. At the time she moved, she was supposed to be temporary and to assist me when I took leave.

She is now tasked to perform the following tasks:

a.   Geriatric Evaluation and Management;

b.   Purchased Skill Home Care;

c.   Veteran-Directed Home and Community Based Services;

d.   HR Matters-REC forms;

e.   Nursing Agencies;

f.   UCERA;

g.   Laundry;

h.   Specialty Beds.

When I protested the fact that she is taking over my tasks and signs her name on her email account as the Administrative Officer for the Center for Aging, I was met with smirks and the representation that I wasn't doing my job. I was told that Ms.

21

Galliano is to do half my job.

I have had my supervisory duties curtailed by the decisions of Dr. Carethers.  When I stated as the Administrative Officer, I had 10 subordinates. In 2011, I was advised that the persons I supervised was reduced to 2.


DATED:     Honolulu, Hawaii, October _24_ , 2014.

_LAVERN B. SPILLANE_   10/24/14