IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAVERN B. SPILLANE, | ) | CV. NO. 13-00527 HG-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ERIC K. SHINSEKI, in his | ) | |
| capacity as the Secretary of | ) | |
| the Department of Veterans | ) | |
| Affairs, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(ECF No. 29)**

In her Complaint, Plaintiff, an African-American woman,
Lavern B. Spillane, alleges discrimination in the form of
hostile work environment based on race, retaliation for filing
prior Equal Employment Opportunity ("EEO") complaints, and
disability discrimination.  Plaintiff cites to Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1,
*et seq.*  Title VII does not apply to discrimination based on
disability, therefore the Court considers Plaintiff's
disability discrimination claims under the Rehabilitation Act
of 1973, 29 U.S.C. § 701 *et seq*.  See <u>Davis v. Team Elec. Co.</u>,

1

520 F.3d 1080, 1093 n. 8 (9th Cir. 2008) ("Title VII does not encompass discrimination on the basis of disability.").

Plaintiff has failed to provide evidence that raises a genuine issue of material fact to support to any of her claims. Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED.**

## PROCEDURAL HISTORY

On October 11, 2013, Plaintiff filed a Complaint. (ECF No. 1.)

On October 1, 2014, Defendant filed a Motion for Summary Judgment (ECF No. 29) and, on that same date, Concise Statement of Facts in Support. (ECF No. 30.)

On October 24, 2014, Plaintiff filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 38) and, on October 27, 2014, a Concise Statement of Facts in Opposition (ECF No. 39.)

On October 27, 2014, Defendant filed a reply. (ECF No. 37.)

On November 12, 2014, Defendant filed an Objection to Plaintiff's Concise Statement of Facts. (ECF No. 40.)

On December 8, 2014, this matter came on for hearing.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving

party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or

denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut.</u> <u>Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

**<u>BACKGROUND</u>**

**Plaintiff Spillane**

Plaintiff is an African American female.  She currently works as a GS-12 Administrative Officer in Geriatrics, Rehabilitation and Extended Care Service ("GREC") at the Department of Veterans' Affairs Pacific Island Health Care System ("VAPIHCS").  Plaintiff has held this position since August 15, 2007. (Def. CSF, Declaration of Erika Johnson-Brooks at Exh. A, Deposition of Lavern Spillane, ECF No. 30-23, hereinafter "Spillane Depo.", at pp. 19, 35.)  Plaintiff's primary job duties include support to the Associate Chief of Staff, Dr. Michael Carethers, at GREC, as well as procurement and contracting, supplies, emergency management, and administrative support for clinical operations. (Def. CSF, Declaration of Michael Carethers ¶ 6, ECF No. 30-2,

5

hereinafter "Carethers Decl.".)          Dr. Michael

Carethers, an African-American male, is the Associate Chief of

Staff of GREC.  Dr. Carthers played a role in interviewing and

selecting Plaintiff for her position.  He directly supervises

Plaintiff.   (Carethers Decl. ¶¶ 4, 6, ECF No. 30-2; Pl. CSF,

Declaration of Lavern B. Spillane ¶ 6 , ECF No. 39-1,

hereinafter, "Spillane Decl.")

**A.   Facts Pertaining to Alleged Hostile Work Environment
      Based on Race**

      **2009 Performance Appraisal**

      Plaintiff raises concerns about her 2009 performance

appraisal.  In 2009, GREC managers, including Plaintiff, were

directed to submit a completed self-appraisal to their

supervisors no later than November 12, 2009. (Carethers Decl.

¶ 10, ECF No. 30-2.)  Defendant contends that Plaintiff

submitted an incomplete self-appraisal to Dr. Carethers on

November 23, 2009, after the deadline. (Carethers Decl. ¶ 11

and at Exh. A, ECF No. 30-3.)  Plaintiff characterizes her

submission as timely, but acknowledges that she did not submit

the self-appraisal to Dr. Carethers until November 23, 2009.

(Spillane Decl. ¶ 20, ECF No. 39-1.) Plaintiff submits that

along with the self-appraisal submitted in November, she sent

Dr. Carethers a Request for Personnel Action and an expected

Quarterly Step Increase.  Subsequently, Plaintiff and Dr.
Carethers had several email communications about her
performance appraisal.  (Spillane Decl. ¶¶ 22-24, ECF No. 39-
1.)  Dr. Carethers requested a more complete self-appraisal
from Plaintiff.  She did not submit the more complete self-
appraisal until January 2010. (Carethers Decl. ¶ 13, ECF No.
30-2.)  Dr. Carethers used Plaintiff's self-appraisal in
preparing his Performance Appraisal for Plaintiff.  Dr.
Carethers completed and dated Plaintiff's Performance
Appraisal for fiscal year 2009 on or about April 20, 2010.
(Def. CSF at Exh. A (Performance Appraisal), ECF No. 30-3.)
The Performance Appraisal rated Plaintiff as "fully
successful" in all categories. (Id.)  A rating of "fully
successful" is the middle rating. "Outstanding" is the highest
rating, followed by "excellent", then "fully successful"
followed by "minimally satisfactory" and "unsatisfactory."  In
the Performance Appraisal, Dr. Carethers also noted
Plaintiff's failure to provide a timely self-appraisal and his
communication to Plaintiff that the self-appraisal that she
did provide was incomplete.  The Performance Appraisal also
notes the GREC managers were informed that appraisals
submitted after 11/12/09 would be rated "fully successful."
(Id.)

In August 2010, Plaintiff requested that Dr. Carethers discuss her Performance Appraisal with her and he did so. (Carethers Decl. ¶ 15, ECF No. 30-2.)  On August 20, 2010, Plaintiff requested reconsideration of her performance appraisal.  (Pl. CSF at Exh. 17, ECF No. 39-19.)  In her email to Dr. Carethers, dated August 10, 2010, Plaintiff expressed the reasons why she believed that she should have been rated "outstanding."  (Pl. CSF at Exh. 17, ECF 39-19.)  Dr. Carethers denied Plaintiff's request for reconsideration of her performance appraisal.  (Spillane Decl. ¶ 24, ECF No. 39-1.)

**February 25, 2011 Denial of Compensation Time**

Spillane takes issue with the fact that Dr. Carethers denied her request for compensatory time ("CT").   On February 25, 2011, Plaintiff sent an email to Dr. Carethers requesting compensatory time off for working from 7:05 a.m. to 7:30 a.m. on that same date.  (Def. CSF at Exh. B, ECF No. 30-4.)  Dr. Carethers denied her request on the grounds that she had not requested it in advance as required by GREC procedures announced to all employees in March 2010.  (Id.)  Spillane disputes that this is the procedure by pointing to an email sent by Dr. Carethers on April 7, 2010.  (Pl. CSF at Exh. 26, ECF No. 39-28.)   The email states that CT is to be requested

8

in advance, or on the day that the CT is being earned. Dr.
Carethers attaches this same email to his Declaration (at Exh.
C) but has a different interpretation of it. His position is
that CT still had to be requested in advance, even if it was
requested for the day that CT was being earned. Although the
language used in the email is less than clear, this
interpretation makes sense. The Court, however, need not
resolve this factual dispute because it is immaterial to
whether Plaintiff has identified a sufficient factual dispute
to have a jury trail on her claims.

**Alleged Denial of Access to Plaintiff's Employees' Time
Cards and Removal of Subordinates from Her Supervision**

Plaintiff complains that she was denied access to her
employees time cards and that subordinates were removed from
her supervision. Since 2011, Dr. Carethers had been
certifying and signing the timecards for most GREC Time and
Leave Units ("T&L"). (Carethers Decl. ¶ 24, ECF No. 30-2.)
According to Dr. Carethers, many GREC supervisors did not have
access to the employees' electronic timekeeping system. (Id.)
Plaintiff disputes this, but points only to an email from her
to Dr. Carethers requesting time card access, and does not
point to any evidence that other supervisors, in fact, had
access. (Spillane Decl. ¶ 37, ECF No. 39-1.) Dr. Carethers

acknowledges that Plaintiff did not have access to her employees' time cards. He explains Plaintiff had significant issues concerning her own timekeeping, *i.e.*, not abiding by advance leave procedures, signing a T&L document beyond her authority, leaving work during her duty hours without her supervisor's authorization, failing to report to the mandatory management meetings, etc. (Carethers Decl. ¶ 25, ECF No. 30-2.) Dr. Carethers further explained that, for these reasons, he did not believe that Plaintiff's actions set a good example for subordinate employees and did not trust her to handle the timekeeping responsibility for other employees. (Id.)

**Allegations that Dr. Carethers Spoke to Plaintiff in a Condescending and Demeaning Manner**

During her deposition, Plaintiff described what she believes to be condescending and demeaning behavior toward her by Dr. Carethers. According to Plaintiff, Dr. Carethers told her at a morning management meeting that she misinterpreted data. (Def. CSF, Spillane Depo. 142: 1-19, ECF No. 30-24.) She also stated that he was "unfeeling" at a meeting when she was in tears over her father-in-law's death. (Def. CSF, Spillane Depo. at pp. 142-43, ECF No. 30-24.) Plaintiff believes that Dr. Carethers acted in a demeaning and condescending manner when he questioned her about why she was late in front of

others outside her office, and on one occasion, knocked on the window of her car outside the building to ask her why she did not attend the mandatory morning management meeting. (Def. CSF, Spillane Depo. at pp. 143-44, ECF No. 30-24.)

**Alleged Harassment by Security Guard Randy Locke**

Plaintiff complains about alleged harassment by Randy Locke, a security guard employed by the Department of Defense. (Spillane Decl. ¶¶ 27-29, ECF No. 39-1.)  Mr. Locke worked as a security guard at Tripler Medical Center, primarily at the Center for Aging. (Spillane Decl. ¶ 27, ECF No. 39-1.)  On February 4, 2011, Plaintiff complained to Dr. Carethers, via email, about Mr. Locke taking long lunches, reading the newspaper to veterans when he should be at the front door, and leaving the golf cart in the wrong place.  (Pl. CSF at Exh. 19, ECF No. 39-21.)  The Provost Marshal responded in defense of Mr. Locke. (Pl. CSF at Exh. 21, ECF No. 39-23.)  Dr. Carethers also responded, that same day, and explained why Plaintiff's concerns were unfounded or without adequate basis. (Pl. CSF at Exh. 21, ECF No. 39-23.)

According to Plaintiff, Mr. Locke retired in March 2012. (Spillane Decl. ¶ 29, ECF No. 39-1.)  Unknown to Plaintiff, Mr. Locke had filed three complaints against her for her use of a Tripler parking pass to park her car at the Center for

Aging.  (Spillane Decl. ¶ 29, ECF No. 39-1, and Pl. CSF at
Exh. 23, ECF No. 39-25.) Plaintiff complains that, even after
Mr. Locke retired, he continued to harass her by taking
pictures of her car.  (Spillane Decl. ¶ 30, ECF No. 39-1, and
Pl. CSF at Exh. 24, ECF No. 39-26.) Plaintiff complained about
such actions by Mr. Locke which she characterized as "employee
harassment."  (Pl. CSF at Exh. 24, ECF No. 39-26.)  After his
retirement, Mr. Locke would come to the Center for Aging to
visit people and get physical therapy. During deposition, Mr.
Locke, admitted that, sometimes while he was there, he would
take pictures of Plaintiff's and other employees' cars because
they were parked in spots reserved for patients. (Pl. CSF at
Exh. 25, ECF No. 39-27.)  He explained that he never did
anything with these pictures.  (Id.)


**B.    Facts Pertaining to Alleged Retaliation for Complaining
       about Discrimination**

       **June 2011 EEO Complaint**

       In June 2011, Plaintiff filed her first complaint with an
Equal Employment Opportunity ("EEO") Counselor with the
Department of Veterans Affairs, Office of Resolution
Management.  (Pl. CSF at Exh. 2, ECF No. 39-4, hereinafter
"June 2011 EEO Complaint".)  Plaintiff alleged that she was

subjected to a hostile work environment and received a discriminatory Evaluation/Performance Appraisal/Proficiency for the years 2009 and 2010 based on her race. (Id.) With regard to her evaluation and performance appraisal, Plaintiff complained that Dr. Carethers rejected her self-assessment and issued everyone else's performance appraisal on a certain date except hers. (Pl. CSF at Exh. 2, ECF No. 39-4.) Plaintiff also complained: that Dr. Carethers had shown security guard Randy Locke the complaint she had made about him; that Dr. Carethers instructed Mr. Locke to inform him of when Plaintiff arrived and left work; that Dr. Carethers banged on Plaintiff's car window; that Dr. Carethers did not give Plaintiff access to her employees' time cards; that Dr. Carethers denied Plaintiff's request for compensatory time; and that Dr. Carethers speaks to Plaintiff in an condescending and demeaning manner. (Id.) Plaintiff requested that the "harassment" be stopped and that her supervisor, Dr. Carethers receive supervisory and sensitivity training. Plaintiff also requested that she be given a step increase as a result of her performance appraisals for the years 2009 and 2010. (Id.) Plaintiff agreed to waive anonymity and elected to participate in mediation. (Id.) There is no evidence in the record concerning mediation in regard to the June 2011 EEO Complaint.

On August 5, 2011, Tracy Strub, from the Regional EEO
Office, sent a letter to Plaintiff regarding the investigation
of her June 2011 EEO Complaint.  (Def. CSF, Declaration of
Miles Miyamoto[1] at Exh. B, ECF No. 30-20.)  The letter
indicates that the Equal Employment Opportunity Commission
("EEOC") had accepted one of Plaintiff's claims – that on
February 28, 2011, Dr. Carethers denied Plaintiff's request
for compensatory time, including her February 28, 2011 request
for 25 minutes of compensatory time, and her request for 45
minutes of compensatory time every day – for investigation.
The EEOC determined that Plaintiff's other claims did not
warrant further investigation.  In dismissing the portion of
Plaintiff's complaint based on harassment, the EEOC stated:

> We have determined your claim of harassment fails the
> severe or pervasive requirement for further
> processing.  There is only one example of any physical
> conduct, and that is Dr. [Carethers'] banging on the
> window, and appears to be a more isolated incident,
> and of a minor physical, act, possibly to get your
> attention when you could not otherwise hear him in
> your vehicle.  None of the events can be construed
> from a reasonable person standpoint to be otherwise
> physically threatening or humiliating, or be
> considered matters that would create an intimidating,
> hostile, or offensive working environment.  Although
> there may be unpleasant working conditions created
> when Dr. [Carethers] shared with the police officer

---

[1] Mr. Miyamoto is the Assistant Regional Counsel with the
Veterans Affair's Office of General Counsel, Region 18.
(Miyamoto Decl. ¶ 2.)

your report about his extended lunch breaks, and for the police officer and others to be advised they may report your arrivals and departures, having your car window banged on, being denied access to time records of your subordinates, and the tone in which Dr. [Carether's] regularly speaks to you, there are not any allegations that any of the remarks or conduct involved any actions that concerned your race. Collectively, these are not matters that establish a pattern of offensive conduct that would create a racially hostile or abusive work environment for anyone.

(Def. CSF, Miyamoto Decl. at Exh. B at p. 2, ECF No. 30-20.)

There is no evidence in the record as to the outcome of the EEOC's investigation of Plaintiff's request for compensatory time.

**August 2012 EEO Complaint**

On August 19, 2012, Plaintiff made a second EEO complaint of discrimination with Department of Veterans Affairs. (Pl. CSF at Exh. 3, ECF No. 39-5, hereinafter "August 2012 EEO Complaint".) In that compliant, as amended, Plaintiff alleged that she was subject to an admonishment because of her disability and denied a reasonable accommodation as a qualified individual with a disability. (Pl. CSF at Exh. 3, ECF No. 39-5; Def. CSF, Miyamoto Decl. at Exh. 3, ECF No. 30-21.) Plaintiff complained that Defendant admonished her and refused to provide her reasonable accommodations in retaliation for her filing of her first EEO complaint in June

15

2011.  (Pl. CSF at Exh. 3, ECF No. 39-5; Def. CSF, Miyamoto

Decl. at Exh. 3, ECF No. 30-21)[2]  Plaintiff also complained

that she was discriminated against when; (1) on April 2, 2012,

Dr. Carethers issued an admonishment and Memorandum of

Expectations to Plaintiff which contained various expectations

concerning her leave and work schedule; and (2) on September

27, 2012, Defendant denied Plaintiff's request for a

reasonable accommodation and issued a Letter of Reprimand

which contained various expectations concerning her leave and

work schedule.

Plaintiff's claims were assigned to an EEO investigator.

(Def. CSF, Miyamoto Decl. at Exh. C, ECF No. 30-21.)  There is

no evidence in the record as to the outcome of the EEOC's

investigation of Plaintiff's August 2012 EEO Complaint.

**Alleged Adverse Employment Actions**

Plaintiff contends that Defendant has taken adverse

employment actions against her by giving her less favorable

performance reviews and by reducing her supervisory duties as

---

[2] In her August 2012 EEO Complaint, Plaintiff references a
February 2011 EEO complaint against Dr. Carethers.  (Pl. CSF
at Exh. 3 at p. 2, ECF No. 39-5.)  Plaintiff complains about
Dr. Carethers denying her compensatory time in February 2011,
but the only other reference to an EEO complaint is for one
filed in June 2011.  Plaintiff appears to have used an
incorrect date in her August 2012 EEO Complaint and likely
intended to reference the June 2011 EEO Complaint.

the administrative officer of GREC. (Spillane Decl. ¶¶ 24, 57, ECF No. 39-1.)

## C. Facts Pertaining to Rehabilitation Act Claims

### Plaintiff's Health Condition

According to Plaintiff, she has received medical treatment from physicians working for the Department of Veterans Affairs. (Spillane Decl. ¶ 13, ECF No. 39-1.) According to Plaintiff, in 1996, she was diagnosed with Dysmenorrhea/Menorrhagia, in late 1996/early 1997, she was diagnosed with Multiple Myoma, and in 1998, she was diagnosed with Degenerative Joint Disease. (<u>Id.</u>)[3]

The Department of Veterans Affairs permits its employees to self-identify whether they are disabled and have a Veteran's Preference. (Spillane Decl. ¶ 12, ECF No. 39-1, and Pl. CSF at Exh. 8, ECF No. 39-10.) According to Plaintiff, in May 26, 2004 she was receiving disability compensation on account of a service-connected disability rated by the Department of Veterans Affairs at 30% or more. (Pl. CSF at

---

[3] Plaintiff provides no definition of her diagnosed medical conditions. According to Merriam-Webster's Dictionary, "Dysmenorrhea" is a medical condition of pain during menstruation and "menorrhagia" means abnormally profuse menstrual flow. <u>See</u> www.merriam-webster.com/medical/dysmenorrhea and www.merriam-webster.com/medical/menorrhagia, visited December 30, 2014.

Exh. 7, ECF No. 39-9.)  There is no evidence as to whether Plaintiff continues to receive disability compensation or whether the Department of Veterans Affairs recognized her as disabled during the time period at issue in this case.

According to Plaintiff, because of her degenerative joint disease, the VA accommodated her by purchasing a chair.[4] (Spillane Decl. ¶ 14, ECF No. 39-1.)  Plaintiff states that this accommodation mitigates, but does not eliminate the effects of, degenerative joint disease.  (Id.)  According to Plaintiff, if she is seated for long periods of time, she stiffens, cannot turn her head, and experiences numbness in her extremities. (Id.)  Plaintiff also testifies that her dysmernorrhea/menorrhagia may erupt and leave her incapable of functioning and that her multiple myoma can cause debilitating cramps and pain.  (Spillane Decl. ¶ 15, ECF No. 39-1.) Plaintiff's declaration further details the activities affected by these conditions.  (Spillane Decl. ¶ 16, ECF No. 39-1.)  Plaintiff lists nearly 20 medications that she has been prescribed and takes.  (Spillane Decl. ¶ 17, ECF No. 39-1.)  She does not make clear which of these she takes on a

---

[4] Plaintiff herself characterizes the purchase of the chair as an accommodation.  There is no evidence as to whether the Department of Veterans Affairs considered the chair any type of accommodation for Plaintiff's health condition.

regular basis and the conditions which many of them treat.
Plaintiff has provided very limited medical evidence of her
alleged disability both to her employer and to the Court.
There is only one doctor's note, dated May 3, 2012, from Dr.
Laura Jones.  (Def. CSF at Exh. M, ECF No. 30-15.)

**Denial of Request for Reasonable Accommodation**

On April 2, 2012, Plaintiff filed a request for a
reasonable accommodation as a qualified individual with a
disability.  (Carethers Decl. ¶ 38, ECF No. 30-2.)  On May 2,
2012, Plaintiff wrote a Memorandum proposing that she begin
work at 6:30 a.m. on Mondays, Tuesdays, Thursdays, and
Fridays, but start work at 7:45 a.m. on Wednesdays. (Def. CSF
at Exh. K, ECF No. 30-13.) She also requested to call in to
the meeting when she is on duty status at 7:30 a.m., and that
if this schedule was not satisfactory, she could work from
home between 1-4 days per week. (Id.)  On May 2, 2012, in
response to this request, Dr. Carethers requested medical
documentation for him to review in support of Plaintiff's
request.  (Def. CSF at Exh. M, ECF No. 30-15.)  Plaintiff
obtained a doctor's note, dated May 3, 2012, from Dr. Laura
Jones, stating that she had foot and neck pain,
rhinosinusitis, and menorrhagia (heavy menstrual periods) and
that the "resultant symptoms vary" and a change in work

19

schedule "as needed" will allow her to manage symptoms. (Def. CSF at Exh. M, ECF No. 30-15; Spillane Decl. ¶ 48, ECF No. 39-1.)  Dr. Carethers states that he did not see the doctor's note until an administrative deposition in connection with Plaintiff's August 19, 2012 EEO Complaint.  (Carethers Decl. ¶ 41, ECF No. 30-2.)  Plaintiff does not dispute this.

On May 14, 2012, Dr. Carethers wrote a Memorandum to Plaintiff asking for a description of how the altered work schedule is needed for the medical condition(s) and her rationale for requesting a different tour core time on Wednesdays than the other days. (Def. CSF at Exh. N, ECF No. 30-16.)  Dr. Carethers states that Plaintiff did not respond. (Carethers Decl. ¶ 33, ECF No. 30-2.)  Plaintiff does not dispute this.

On June 5, 2012, in a Memorandum to Plaintiff, Dr. Carethers denied her Request. (Def. CSF at Exh. O, ECF No. 30-17.)  In the Memorandum, Dr. Carethers explained that he had not received the requested information.  Dr. Carethers also noted that Plaintiff had continued not to attend, or be late to, several mandatory meetings.  (Id.)  In his declaration, Dr. Carethers explains that he did not believe that an earlier start time for four days of the week would be feasible since she was already having difficulty getting to work at 7:30 a.m.

(Carethers Decl. ¶ 44, ECF No. 30-2.)

Plaintiff states that a mediation meeting regarding Plaintiff's request for reasonable accommodation took place on July 24, 2012. (Spillane Decl. ¶ 50, ECF No. 39-1 and Pl. CSF at Exh. 48, ECF No. 39-50.) As evidence of the mediation meeting, Plaintiff points to an email with the subject as "Mediation Reminder and Location 7/24 1-4" addressed to Plaintiff and Dr. Carethers. (Pl. CSF at Exh. 48, ECF No. 39-50.) According to Plaintiff, Dr. Carethers attended the mediation meeting. (Id.) Plaintiff also represents that the mediator recommended to allow the accommodations for 90 days and then evaluate her request. (Spillane Decl. ¶ 50, ECF No. 39-1.) There is no other evidence as to the mediation or its outcome.

After Dr. Carethers denied Plaintiff's request for reasonable accommodation, it was referred to Dr. Carethers' supervisor, Dr. William Dubbs. (Spillane Decl. ¶ 48, ECF No. 39-1.) There is a dispute between Dr. Dubbs and Plaintiff as to whether they ever met. Plaintiff says that they did not, while Dr. Dubbs says that they did. (Spillane Decl. ¶ 48, ECF No. 39-1; Carethers Decl. ¶ 45, ECF No. 30-2; Pl. CSF at Exh. 50, Deposition of Dr. William Dubbs at pp. 26-27, ECF No. 30-52.) In any event, on August 23, 2012, Dr. Dubbs, Chief of

21

Staff, denied Plaintiff's request for reasonable accommodation. (Def. CSF at Exh. P, ECF No. 32-1.) In denying Plaintiff's request, Dr. Dubbs stated that Plaintiff had not provided sufficient medical documentation and that the accommodation requested would not allow her to perform the duties that her supervisor needed or may need during normal business hours. (Id.)

A few days prior to Dr. Dubbs' final denial of her request for a reasonable accommodation, Plaintiff filed her August 19, 2012 EEO Complaint stating that she had not yet received a written denial. In her August 19, 2012 EEO Complaint, Plaintiff complained that she had requested a reasonable accommodation for her disability after receiving disciplinary action related to her disabilities. (Pl. CSF at Exh. 3, ECF No. 39-5.) Plaintiff also accused Dr. Carethers of refusing to participate in the interactive process. (Id.) Plaintiff, however, acknowledges that Dr. Carethers requested additional medical information from her, in writing, on May 2, 2012.[5] Plaintiff's only response was to provide the one

---

[5] Plaintiff states that under the VA Handbook 5975.1, *Processing Requests for Reasonable Accommodation From Employees and Applicants with Disabilities*, the Defendant had 30 days to process her request. (Pl. CSF at Exh. 3 at p. 2, ECF No. 39-5.) According to the VA Handbook 5975.1, "[r]equests from employees should ordinarily be processed within thirty (30) calendar days, not counting the time

paragraph letter from Dr. Laura Jones, dated May 3, 2014. (Def. CSF at Exh. M, ECF No. 30-15.)  On May 14, 2012, Dr. Carethers requested additional information from Plaintiff and Plaintiff did not respond.  Plaintiff did not ask for additional time to respond. Dr. Carethers waited until June 5, 2012 and, on that date, denied Plaintiff's request for reasonable accommodation.  He had not received any additional information from Plaintiff or Plaintiff's doctor.

**D.   Facts Pertaining to Plaintiff's Work Performance**

**March 30, 2010 Admonishment**

Plaintiff acknowledges that she was consistently late to daily management meetings.  (Def. CSF, Spillane Depo. at pp. 75, 77, ECF No. 30-24.)  She does not dispute that since August 2011, she has been consistently late to the mandatory management team meetings and on most occasions, did not attend at all. (Carethers Decl. ¶ 33, ECF No. 30-2.)  Dr. Carethers informally counseled Plaintiff regarding this issue on

---

waiting for medical documentation." (VA Handbook 5975.1 at p. 18, available at www.diversity.va.gov/programs/files/pwd/Handbook_5975-1.pdf, visited December 30, 2014.)  Plaintiff complains that Dr. Carethers' request for additional medical information was untimely because it was sent a few hours after the close of business on the 30th day.  (Pl. CSF at Exh. 3 at p. 2, ECF No. 39-5.)  Such a minimal delay does not constitute a refusal to participate in an interactive process, particularly in light of Plaintiff's failure to provide specific medical information along with her request for a reasonable accommodation.

multiple occasions, both in emails and in person. (Carethers Decl. ¶ 34, ECF No. 30-2 and Def. CSF at Exh. G, ECF No. 30-9.) Yet, Plaintiff continued to be a "no show" at these mandatory meetings. (Id.)

On March 30, 2012, Dr. Carethers issued an Admonishment to Plaintiff for her failure to provide a written response to his February 28, 2012 inquiry regarding her failure to timely report to the daily management meeting, and for her tardiness/unexcused absences for fourteen (14) out of the seventeen (17) work days. (Def. CSF at Exh. H, ECF No. 30-10.) Dr. Carethers also admonished Plaintiff for failing to follow instructions. (Id.) On March 5, 2012, Dr. Carethers had instructed Plaintiff to provide him a written response to his February 28, 2012 inquiry. (Id.) Plaintiff did not respond. Dr. Carethers also included a Memorandum of "Expectations in conjunction with Admonishment Letter dated 3/30/12" detailing the leave procedures and his requirement that she attend the 7:30 a.m. daily meetings. (Id.)

**September 27, 2012 Reprimand**

Plaintiff was repeatedly late to, or failed to attend the morning management team meetings. (Carethers Decl. ¶ 46, ECF No. 30-2.) Plaintiff also failed to prepare the GREC Emergency Operating Plan ("EOP"), as requested by Dr.

24

Carethers and which was due in January 2012. (Carethers Decl.

¶ 47, ECF No. 30-2.) After receiving multiple complaints from

Steve Burton, the Facility Emergency Preparedness Coordinator

with GREC, that he had not received the EOP, Dr. Carethers

instructed Plaintiff to provide it to Mr. Burton by June 29,

2012. (Carethers Decl. ¶ 48, ECF No. 30-2.)  Mr. Burton did

not receive it until July 18, 2012.  (Carethers Decl. ¶ 49,

ECF No. 30-2.)  Plaintiff's only explanation for her failure

to perform this job function is that it could have been tasked

to another employee.  (Pl. CSF at Exh. 29, ECF No. 39-31.)

On September 27, 2012, Dr. Carethers issued a Reprimand

to Plaintiff: (1) for her failure to complete the GREC EOP by

June 29, 2012 as directed; and (2) for sixteen (16)

tardies/unexcused absences out of nineteen workdays in May

2012; seven (7) tardies/unexcused absences out of nineteen

workdays in June 2012; and nine (9) tardies/unexcused absences

out of 19 workdays in July 2012. (Def. CSF at Exh. R, ECF No.

32-3.)

## ANALYSIS

### A.  Hostile-work Environment Based on Race

Title VII of the Civil Rights Act of 1964 provides, in

relevant part:

> It shall be unlawful employment practice for an
> employer ... to discharge any individual, or
> otherwise to discriminate against any individual
> with respect to his compensation, terms, conditions,
> or privileges of employment, because of such
> individual's . . . race . . . .

42 U.S.C. § 2000e-2 (a)(1)(2006). Title VII guarantees the right to be free from a hostile work environment. A hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." _Harris v. Forklift Systems, Inc.,_ 510 U.S. 17, 21 (1993) (quoting _Meritor Sav. Bank FSB v. Vinson_, 477 U.S. 57, 65-67 (1986)).

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." _Vasquez v. County of Los Angeles,_ 349 F.3d 634, 642 (9th Cir. 2003).

In determining whether a hostile work environment existed, the court must consider the totality of the circumstances. Relevant factors include the frequency of the

discriminatory conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating or merely offensive, and whether the conduct unreasonably interferes with the employee's work performance. <u>Harris</u>, 510 U.S. at 23.

1. **Plaintiff has failed to present evidence that she was subjected to a hostile work environment because of her race**

Plaintiff has not presented evidence that (1) she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; or (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. The evidence in the record shows only that Defendant engaged in conduct typical of any employer, such as conducting performance reviews, asking that Plaintiff attend meetings on time, and issuing formal admonishments and reprimands for conduct that was not satisfactory.

Plaintiff has expressed her dislike for some of Dr. Carethers' actions, describing them as "condescending and demeaning". Putting aside the question of whether Plaintiff's characterization of Dr. Carethers' actions is accurate, there is no evidence linking any of this conduct to Plaintiff's race.

The actions of security guard Randy Locke also do not support Plaintiff's hostile work environment claim.  There is no evidence to show that Mr. Locke targeted Plaintiff or that he was otherwise engaging in harassing conduct that Plaintiff's employer failed to prevent.  To the contrary, the evidence shows that Mr. Locke was concerned about other cars parked in patient stalls at the Center for Aging, and not just Plaintiff's car.  Plaintiff does not dispute that she was parked in patient stalls or that this was improper.

This case is similar to <u>Surrell v. California Water Service Co</u>., 518 F.3d 1097, 1109 (9th Cir. 2008) in which the Ninth Circuit upheld the district court's grant of summary judgment to the employer on plaintiff's hostile work environment claim.  The plaintiff complained about comments made by her former supervisor.  The plaintiff's former supervisor had confronted her in front of a customer about failing to perform certain aspects of her job, accused her, in front of customer and co-worker, of failing to pay attention to her job, and, on more than one occasion, told the plaintiff that she was too slow with her work.  <u>Id.</u> at 1108.  The court noted that the plaintiff did not present any evidence that the comments were based on race, rather they "were all performance related."  <u>Id.</u> at 1109.  After considering "all the

circumstances, including the frequency of the allegedly

discriminatory conduct, its severity, and whether it

unreasonably interferes with an employee's work performance",

the court concluded that "the alleged comments were not

sufficiently severe or pervasive to sustain a

hostile-work-environment claim." Id.

Plaintiff has failed to raise a genuine issue of material

fact as to her hostile work environment claim.[6]

---

[6] Plaintiff's Counter Concise Statement of Facts in
Opposition to Defendant's Motion for Summary Judgment, Number
11, also refers to a Filipino male employee named John Pacada.
(Pl. CSF, ECF No. 39.) Plaintiff makes the somewhat
unintelligible assertion that: "John Pacada, the Filipino male
who Plaintiff has complained that Michael Carethers give [sic]
preferential treatment to in that Plaintiff does not have
access to his timecards, has been shown by records of the
Department of Veterans Affairs, to have used, for the period
of August 1, 2009 to August 2011, 45.4 of authorized leave,
263 hours of annual leave, 19 hours of family leave and 232.5
hours of sick leave." (ECF No. 39.) From the exhibits
attached to Plaintiff's declaration it appears that Plaintiff
was one of Mr. Pacada's supervisors. (Spillane Decl. at Exh.
33, 34, 36, 37, 38, ECF No. 39-1.)   The suggestion that
Defendant treated Mr. Pacada more favorably than Plaintiff is
not relevant to her hostile work environment claim.
Plaintiff's assertion regarding Mr. Pacada would also have no
relevance to a Title VII claim based on race discrimination.
See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir.
1998) (unlawful discrimination is presumed if the plaintiff
can show that "(1) she belongs to a protected class, (2) she
was performing according to her employer's legitimate
expectations, (3) she suffered an adverse employment action,
and (4) other employees with qualifications similar to her own
were treated more favorably.")  The evidence presented is
insufficient to show that Mr. Pacada was being treated more
favorably than Plaintiff.  Rather, it shows only that Mr.
Pacada used various types of leave throughout the year.

**B.**  **Retaliation for Filing prior Equal Employment Opportunity Complaints**

   **1.**   **Plaintiff has not shown a prima facie case of retaliation**

   To succeed in a retaliation claim, Plaintiff must demonstrate "(1) that she was engaging in protected activity/opposition, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision."   <u>Folkerson v. Circus Circus Enterprises, Inc</u>., 107 F.3d 754, 755 (9th Cir. 1997).

   Plaintiff has met the first prong.  She has presented sufficient evidence that she was engaging in a protected activity because she filed EEO complaints.  Plaintiff has also presented evidence as to the second prong.  She has presented evidence that she has suffered some adverse employment actions in the form of less than outstanding performance reviews and because she had her supervisory responsibilities reduced.

   Plaintiff has not put forth sufficient evidence to meet her burden as to the third prong.  "[A] plaintiff making a retaliation claim under [Title VII,] § 2000e-3(a) must establish that his or her protected activity was a but-for

_____

cause of the alleged adverse action by the employer."

University of Texas Southwestern Medical Center v. Nassar, ___

U.S. ___ , 133 S.Ct. 2517, 2534 (2013).  The record shows that

Plaintiff has not put forth any evidence establishing a causal

link between the filing of her EEO complaints and the actions

by Defendant of which she complains.  See Villiarimo v. Aloha

Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002) ("To

establish causation [plaintiff] must show 'by a preponderance

of the evidence that engaging in the protected activity was

one of the reasons for'" Defendant's adverse employment

actions) (quoting Ruggles v. California Polytechnic State

Univ., 797 F.2d 782, 785 (9th Cir. 1986)).  Defendant's

actions in terms of admonishing and reprimanding Plaintiff and

denying her request for reasonable accommodation are based on

circumstances independent from her filing of EEO complaints.

   **2.   Defendant has provided legitimate, non-
        discriminatory reasons for its actions**

     If the plaintiff makes out a prima facie case, the burden

shifts to the defendant to proffer legitimate, non-

discriminatory reasons for its actions.  Even assuming

Plaintiff had made out a prima facie case for retaliation, her

retaliation claim still fails because Defendant has put forth

legitimate, non-discriminatory reasons for its actions and

Plaintiff has not shown that the reasons proffered by Defendant are pretextual. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." Vasquez, 349 F.3d at 641.

Plaintiff received an Admonishment on March 30, 2010 and a Reprimand on September 27, 2012. Both of these actions are supported by undisputed facts as to Plaintiff's problems with her work performance. Defendant also denied Plaintiff's request for reasonable accommodation. Defendant's denial of Plaintiff's request for reasonable accommodation is also supported by credible facts. There is no evidence based upon which a reasonable juror could find that Defendant retaliated against Plaintiff for filing EEO complaints by denying her a reasonable accommodation.

Plaintiff points to two other employees – Ron Yamamoto and Joanne Freeman – who have filed unrelated discrimination and whistleblower retaliation cases against the Department of Veterans Affairs. (Spillane Decl. ¶¶ 33-34, 54-55, ECF No. 39-1, and Pl. CSF at Exhs. 28, 29, 51, ECF No. 30, 31, 53.) This is not evidence of retaliation against Plaintiff in this case. In sum, Plaintiff has not put forth evidence to

show that the reasons for these adverse employment actions were not legitimate.  Plaintiff has failed to raise a genuine issue of material fact as to her retaliation claim.

**C.  Rehabilitation Act Claims**

    **1.  Rehabilitation Act retaliation claim**

To bring a claim under the Rehabilitation Act, the plaintiff must prove (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an adverse employment action because of her disability.  See <u>Hutton v. Elf Atochem North America, Inc</u>., 273 F.3d 884, 891-892 (9th Cir. 2001).

        **a.  Plaintiff has not presented evidence that she is disabled within the meaning of the Rehabilitation Act or that she is a qualified individual with a disability**

To satisfy the first prong of a Rehabilitation Act claim, Plaintiff must put forth evidence that she is disabled.  Plaintiff has not presented evidence that she is disabled within the meaning of the Rehabilitation Act.  For a claim under the Rehabilitation Act, an individual is disabled if that individual: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities;(2) has a record of such an impairment, or (3) is regarded as having such an impairment.  <u>Coons v. Secretary</u>

of U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004).

Working is a major life activity.  See 29 C.F.R. § 1630.2(i).

With respect to working, "substantially limited" means that

one is "significantly restricted in the ability to perform

either a class of jobs or a broad range of jobs in various

classes as compared to the average person having comparable

training, skills and abilities."  29 C.F.R. §

1630.2(j)(3)(I).  "[T]he inability to perform a single,

particular job does not constitute a substantial limitation in

the major life activity of working."  Id.

The only record evidence, other than Plaintiff's own

testimony, to support Plaintiff's claim that she is disabled

within the meaning of the Rehabilitation Act, is a letter from

Dr. Laura Jones, dated May 3, 2012.  The letter from Dr. Jones

describes Plaintiff's medical conditions only in general

terms.  After listing Plaintiff's medical conditions, the last

two sentences of the three sentence letter state: "The

severity of Ms. Spillane's medical conditions and resultant

symptoms vary, thus she is requesting alteration of her work

schedule as needed to manage symptoms and so that she may most

effectively perform her job duties.  She will attempt to work

the required number of hours each week even if her schedule is

altered."  (Def. CSF at Exh. M, ECF No. 30-15.)  Dr. Jones is

simply reciting Plaintiff's request.  Dr. Jones does not opine as to whether, in her professional opinion, she believes that Plaintiff has a physical impairment that substantially limits her ability to work or needs to be accommodated.  Plaintiff's unsupported allegations and Dr. Jones' letter do not constitute a record of impairment so as to fall within the definition of disabled under the Rehabilitation Act.

Finally, Plaintiff has not presented any evidence that her employer regards her as disabled.  There is no evidence that the Department of Veterans Affairs currently perceives her as having a disability that substantially limits her ability to work.

Because Plaintiff has not presented sufficient evidence to show that she has a disability, Plaintiff also has not satisfied the second prong of the test – *i.e.*, that Plaintiff is a qualified individual with a disability.

> **b.    Plaintiff has not established that Defendant took adverse employment actions against her because of her claimed disability**

Plaintiff has not presented evidence to satisfy the third prong of the test – that she has suffered an adverse employment action because of her disability.  Even if Plaintiff had presented sufficient evidence to show that she is disabled, Plaintiff has not presented evidence to show that

35

she was reprimanded on September 30, 2012, or that Defendant
otherwise took adverse actions against her, because of her
disability.  To meet the causation requirement, Plaintiff must
establish through admissible evidence that the disability was
a motivating factor in the adverse employment action.  <u>See</u>
<u>Head v. Glacier Northwest Inc.</u>, 413 F.3d 1053, 1065 (9th Cir.
2005). There is no such evidence.

Plaintiff made a request for reasonable accommodation on
April 2, 2012.  (Carethers Decl. ¶ 38, ECF No. 30-2.)  There
is no evidence that Defendant would have known of Plaintiff's
claimed disability until that date.  On September 27, 2012,
approximately six months after she requested a reasonable
accommodation, Dr. Carethers issued Plaintiff a Reprimand for
her failure to complete the Geriatrics, Rehabilitation and
Extended Care Service, Emergency Operating Plan, by June 29,
2012, as directed; for sixteen tardies/unexcused absences out
of nineteen workdays in May 2012, seven tardies/unexcused
absences out of nineteen workdays in June 2012, and nine
tardies/unexcused absences out of nineteen workdays in July
2012.  (Def. CSF at Exh. R, ECF No. 32-3.)  There is no
evidence that Defendant reprimanded Plaintiff because of her
accommodation request.  The September 27, 2012 reprimand was
based on conduct independent of Plaintiff's disability.  The

conduct for which Plaintiff was reprimanded is undisputed. Defendant admonished Plaintiff for some of the same conduct – failing to attend, or being late to, meetings –  in March 2012 before she made a request for accommodation.

**2. Rehabilitation Act failure to accommodate claim**

"An employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer].'" Zivkovic v. Southern California Edison Co.,  302 F.3d 1080, 1089 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A) (emphasis added)); see Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("Because the ADA was modeled on section 504 of the Rehabilitation Act, "courts have applied the same analysis to claims brought under both statutes.").

Plaintiff's Rehabilitation Act retaliation claim fails because she has not presented sufficient evidence that she is disabled.  Plaintiff's Rehabilitation Act claim based on failure to accommodate fails for this reason and also fails for an additional reason.  Even if Plaintiff were a qualified

individual with a disability, her claim fails because she did
not adequately participate in the interactive process to
evaluate her request for a reasonable accommodation.  It is
undisputed that Dr. Carethers requested that Plaintiff provide
additional medical information in order to evaluate her
request.  (Def. CSF, at Exh. N, ECF No. 30-16.)  Plaintiff did
not provide the requested information.  (Carethers Decl. ¶ 43,
ECF No. 30-1 and Def. CSF at Exh. O, ECF No. 30-17.) This
reason for denial was cited by both Dr. Carethers and Dr.
Dubbs. (Def. CSF at Exhs. O and P, ECF No. 30-17, 32-1.)  An
employer cannot be liable for failing to provide a reasonable
accommodation where the employee does not participate in the
process. See Zivkovic, 302 F.3d at 1089 ("Liability for
failure to provide reasonable accommodations ensues only where
the employer bears responsibility for the breakdown in the
interactive process.") (citation and quotation omitted); Beck
v. University of Wisconsin Bd. of Regents, 75 F.3d 1130,
1134-35 (7th Cir. 1996) ("By the statutory language,
'reasonable accommodation' is limited by the employer's
knowledge of the disability.").  Plaintiff does not challenge
the process employed by Defendant to evaluate her reasonable
accommodation request.  Defendant engaged in the interactive
process to evaluate Plaintiff's reasonable accommodation

38

request.  Plaintiff did not.

Plaintiff has failed to identify a genuine issue of material fact as to her Rehabilitation Act claim under any theory.

## **CONCLUSION**

Plaintiff has not shown a genuine issue of material fact as

to her claims: (1) for hostile work environment based on race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; (2) for retaliation for filing prior Equal Employment Opportunity complaints in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; or (3) for disability discrimination as prohibited by the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

Defendant's Motion for Summary Judgment (ECF No. 29) is **GRANTED.**

Plaintiff's case is **DISMISSED.**

//

//

//

//

//

//

There are no remaining claims or parties herein.
The Clerk of Court is **DIRECTED** to enter judgment in favor
of Defendant and to close the case.

IT IS SO ORDERED.

DATED:        Honolulu, Hawaii, January 5, 2015.



                              /s/ Helen Gillmor

                         Helen Gillmor
                         United States District Judge

---

Spillane v. Shinseki; Civ. No. 13-00527 HG-RLP;   **ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 29)**